**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Afonso Infante, | No. CV-25-02537-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Namecheap Incorporated, | |
| Defendant. | |

*Pro se* Plaintiff Afonso Infante ("Plaintiff")[1] has filed a Complaint (Doc. 1), a Motion for Temporary Restraining Order (Doc. 2), and an Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 11). Upon review, Plaintiffs' Application, signed under penalty of perjury, indicates that he is financially unable to pay the filing fee. The Court will grant Plaintiff's Application and allow him to proceed *in forma pauperis* ("IFP"). The Court will therefore proceed to screen Plaintiffs' Complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2).

**I.  Background**

Plaintiff brings several claims against Defendant Namecheap Incorporated ("Defendant" or "Namecheap") for the suspension of domain names he allegedly owns. (Doc. 1 at 1). Plaintiff states he registered and owns six internet domains:

---

[1] The Court recommends that Plaintiff review the information available in the District Court's Handbook for Self-Represented Litigants, which is available here: http://www.azd.uscourts.gov/handbook-self-represented-litigants. The District of Arizona also has an "Advice Only Clinic" which offers 30-minute appointments of free phone advice from volunteer lawyers for people who are representing themselves: https://www.azd.uscourts.gov/federal-court-advice-only-clinic-phoenix.

vanessarallonza.com, vanessa-rallonza.com, vanessarallonza.net, vanessa-rallonza.net, vanessarallonza.org and vanessa-rallonza.org. (*Id*. at 4). These sites are apparently related to a "particular individual" who Plaintiff claims he has had "prior interactions" with. (*Id*.) Plaintiff notes that Defendant suspended these domains because of an ongoing legal proceeding in which a "third party" obtained a Civil Harassment Restraining Order ("CHRO") against him in California. (*Id*. at 5). Plaintiff avers that he had appealed the CHRO which he claims stays the Order under California Code of Civil Procedure § 916(a). (*Id*.) Plaintiff also asserts that there is an unknown "Doe" defendant who participated in or induced the wrongful acts alleged in his Complaint. (*Id*. at 3).

Due to Defendant's voluntary suspension of Plaintiff's various domains, he brings claims against it for: (1) Conversion under California Law; (2) Breach of Contract; (3) Breach of Implied Covenant of Good Faith and Fair Dealing under Nevada Law; (4) Unfair Competition under California's Unfair Competition Law ("UCL"), Business & Professions Code §§ I 7200 et seq.; (5) Tortious Interference with Contract against the Doe Defendant; and (6) Declaratory Judgment under 28 U.S.C. § 2201. (Doc. 1 at 19).

**II.   Legal Standard**

When a party has been granted IFP status, the Court must review the complaint to determine whether the action:

(i)     is frivolous or malicious;

(ii)    fails to state a claim on which relief may be granted; or

(iii)   seeks monetary relief against a defendant who is immune from such relief.

*See* 28 U.S.C. § 1915(e)(2)(B).[2] In conducting this review, "section 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).

---

[2] "While much of § 1915 outlines how prisoners can file proceedings *in forma pauperis*, § 1915(e) applies to all *in forma pauperis* proceedings, not just those filed by prisoners." *Long v. Maricopa Cmty. Coll. Dist.*, 2012 WL 588965, at *1 (D. Ariz. Feb. 22, 2012) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126 n.7 (9th Cir. 2000) ("[S]ection 1915(e) applies to all *in forma pauperis* complaints[.]"); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.") (citation omitted). Therefore, section 1915 applies to this non-prisoner IFP Complaint.

Federal Rule of Civil Procedure 8(a) requires complaints to make "a short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, 'the defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. The Court is mindful that it must "construe pro se filings liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)).

**III.   Discussion**

The Court will screen each of Plaintiff's claims for relief in turn.

**A.   Conversion**

Plaintiff first brings a claim for Conversion under California state law.

---

[3] "Although the *Iqbal* Court was addressing pleading standards in the context of a Rule 12(b)(6) motion, the Court finds that those standards also apply in the initial screening of a complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A since *Iqbal* discusses the general pleading standards of Rule 8, which apply in all civil actions." *McLemore v. Dennis Dillon Auto. Grp., Inc.*, 2013 WL 97767, at *2 n.1 (D. Idaho Jan. 8, 2013).

- 3 -

(Doc. 1 at 10). He makes no allegations or assertions as to why California law applies, however. (*See id.*) Elsewhere in his Complaint, he alleges that Nevada law applies to the contract between the parties as they agreed to a Nevada choice-of-law provision. (Doc. 1 at ¶¶ 30). He does not attach the contract he claims was breached for the Court's review, however. (*See* Doc. 1). The CHPO was entered against Plaintiff by a California state court, but as alleged by Plaintiff, Defendant is an Arizona corporation with its principal place of business in Phoenix. (*Id.* at ¶ 1). He also states that he is a Nevada resident. (*Id.*) He alleges that the dispute "arose" in California. (*Id.* at ¶ 35). Before the Court can decide this claim, it must decide which states substantive law to apply.[4]

### 1. Choice of Law

Plaintiff asserts that the Court has *both* Diversity Jurisdiction *and* Federal Question Jurisdiction over this matter. (Doc. 1 at ¶ 1). "Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *In re Cnty. of Orange*, 784 F.3d 520, 523–24 (9th Cir. 2015). "When exercising diversity jurisdiction, federal district courts apply the forum state's choice-of-law rules to determine what law applies to the case." *Rountree v. Ching Feng Blinds Indus. Co.*, 393 F. Supp. 2d 942, 945 (D. Alaska 2005). Furthermore, when a district court "hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims." *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).

Some courts in the Ninth Circuit have applied federal choice-of-law rules to state-law issues. *See, e.g., Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) (characterizing circuit precedent as standing for the general proposition that "where jurisdiction is not premised on diversity of citizenship, federal common law governs"). But "when the particular issue is ultimately determined by state rather than federal law . . . the

---

[4] "Although parties are generally entitled to select the law which applies to contractual claims, we have expressly determined that tort claims are not governed by a contractual choice-of-law provision." *Invs. Equity Life Ins. Co of Hawaii, Ltd. v. ADM Invs. Servs., Inc.*, 1 F. App'x 709, 711 (9th Cir. 2001) (citing *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407–08 (9th Cir.1992) (tort claims are not governed by contractual choice-of-law provisions).

Ninth Circuit and the lower courts have sometimes applied the forum state's choice-of-law rule." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 862 (9th Cir. 2022) (Baker, J., concurring) (citation omitted). Thus, the Court will apply Arizona law to the choice of law question because Plaintiff's conversion and other tort claims are determined by state, not federal, law.

Arizona Courts follow the Restatement (Second) of Conflict of Laws ("Restatement") in determining choice-of-law issues. *R & L Ltd. Invs., Inc. v. Cabot Inv. Props., LLC*, 729 F. Supp. 2d 1110, 1113 (D. Ariz. 2010) (citing *Swanson v. Image Bank, Inc.*, 77 P.3d 439, 441 n. 2 (Ariz. 2003)). Specifically, it follows the Restatement's "most significant relationship" test. *Labertew v. Chartis Prop. Cas. Co.*, 363 F. Supp. 3d 1031, 1036 (D. Ariz. 2019) (citations omitted).

The choice of law applicable to tort claims under Arizona is § 145 of the Restatement. It provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, ***has the most significant relationship to the occurrence*** and the parties under principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>>
>> (b) the place where the conduct causing the injury occurred,
>>
>> (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Magellan Real Est. Inv. Tr. v. Losch*, 109 F. Supp. 2d 1144, 1155–56 (D. Ariz. 2000) (emphasis added).

Here, the Court finds that Arizona law applies to Plaintiff's tort claims. While the CHPO was entered in California, the alleged injury is the suspension of Plaintiff's domains.

Defendant is an Arizona corporation and its American datacenters are located in Phoenix.[5] Thus, the state with the most significant relationship to the occurrence and the parties is Arizona. *Magellan*, 109 F. Supp. 2d at 1155–56.

### 2. Merits

Under Arizona law, "[c]onversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Miller v. Hehlen*, 209 Ariz. 462, 472, 104 P.3d 193, 203 (App. 2005) (quoting Restatement (Second) of Torts § 222A(1) (1965)). "An action for conversion ordinarily lies only for personal property that is tangible, or to intangible property that is merged in, or identified with, some document.' " *Id.* (quoting 18 AmJur.2d Conversion § 7 (2004)). A website does not "constitute intangible personal property in the same sense as a stock certificate or an insurance policy." *Id.*

Here, because the domain names Plaintiff claims were wrongfully suspended are purely intangible property, Plaintiff's claim cannot proceed as it is not the proper subject of a conversion action. *See Hao v. GoDaddy.com LLC*, 2023 WL 3078660, at *2 (D. Ariz. Apr. 25, 2023) (dismissing the plaintiff's conversion claim because a domain name is intangible property). Therefore, the Court must dismiss Plaintiff's conversion claim. *See id.*

### B. Breach of Contract

Plaintiff's next claim is for breach of contract. Plaintiff alleges that the parties agreed upon a Nevada choice-of-law provision in their contract.[6] (Doc. 1 at ¶ 30). Yet, as previously noted, Plaintiff has not attached the contract at issue in this matter. Regardless,

---

[5] *Where are your datacenters located? How can I request to change the datacenter?*, NAMECHEAP, (last updated May 7, 2025) https://www.namecheap.com/support/knowledgebase/article.aspx/136/22/where-are-your-datacenters-located-how-can-i-request-to-change-the-datacenter/.

[6] "Nevada law permits the parties 'within broad limits to choose the law that will determine the validity and effect of their contract.' " *Sentry Select Ins. Co. v. Meyer*, 594 F. Supp. 2d 1193, 1196 (D. Nev. 2009) (quoting *Pentax Corp. v. Boyd*, 111 Nev. 1296, 904 P.2d 1024, 1025 (1995)).

- 6 -

"[b]oth Nevada and Arizona use the same test for breach-of-contract claims." *Henderson v. Hughes*, 2020 WL 13532375, at *2 (D. Nev. July 15, 2020).

To state a cognizable claim for breach of contract under Nevada law, a plaintiff must plausibly allege three elements: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 494 F.Supp.3d 913, 919–20 (D. Nev. 2006); *see also Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev. 1987) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement.") (citation omitted). "Generally, a contract is valid and enforceable if there has been 'an offer and acceptance, meeting of the minds, and consideration.'" *Tarr v. Narconon Fresh Start*, 72 F. Supp. 3d 1138, 1141 (D. Nev. 2014) (quoting *May v. Anderson*, 121 Nev. 668, 119 P.3d 1254, 1257 (2005)).

Plaintiff alleges that the parties entered into a "valid and enforceable contract– namely, Namecheap's Domain Name Registration Agreement and related Terms of Service, which govern the provision of domain registration services." (Doc. 1 at ¶ 25). Plaintiff next alleges that Defendant "materially breached the contract by suspending and disabling Plaintiff's domain registration services without contractually valid cause and without following required procedures." (*Id*. at ¶ 27). He finally alleges that, as a direct and proximate result of Defendant's breach, Plaintiff has suffered damages; including "the loss of the service that he paid for." (*Id*. at ¶ 28). Plaintiff also preemptively alleges that he has "performed all conditions, covenants, and obligations required of him under the contract, except for any obligations that were excused by Namecheap's breach." (*Id*. at ¶ 26).

While the Court cannot review the contract between the parties since Plaintiff has not submitted it, the Court finds that Plaintiff has stated a plausible breach of contract claim under Nevada law when construed liberally. *Iqbal*, 556 U.S. at 678; *Saini*, 494 F.Supp.3d at 919–20.

/ / /

- 7 -

### C. Breach of Implied Covenant of Good Faith and Fair Dealing

Next, Plaintiff brings a claim for breach of the covenant of good faith and fair dealing under Nevada Law for interfering with the Registration Agreement, i.e., his breach of contract claim. (*Compare* Doc. 1 at ¶¶ 30–31 *with* ¶ 27). "Nevada law implies a covenant of good faith and fair dealing in every contract." *Jimenez v. GEICO Gen. Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020) (citing *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991)). However, "[i]t is well established that a claim alleging breach of the implied covenants of good faith and fair dealing cannot be based on the same conduct establishing a separately pled breach of contract claim." *Id.* (quoting *Stebbins v. Geico Ins. Agency*, 2019 WL 281281, at *2 (D. Nev. Jan. 22, 2019)). Because Plaintiff's claim for breach of the covenant of good faith and fair dealing is premised on his breach of contract claim, this claim cannot proceed. *See id.*

### D. Unfair Competition

Plaintiff alleges that Defendant's suspension of his domains was an unlawful act or practice under the California Business and Professional Code. (Doc. 1 at ¶ 35). This claim cannot be maintained here.

The Ninth Circuit has held that an unfair competition claim fails where the parties are not in competition and no public confusion was alleged. *Lerner & Rowe PC v. Brown Engstrand & Shelly LLC*, 684 F. Supp. 3d 953, 956 (D. Ariz. 2023), *aff'd*, 119 F.4th 711 (9th Cir. 2024), cert. denied, 2025 WL 1496488 (U.S. May 27, 2025) (citing *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401 (9th Cir. 1992)). "Under Arizona law, 'the universal test for unfair competition is whether the public is likely to be confused.' " *ACT Grp. Inc. v. Hamlin*, 2012 WL 2976724, at *6 (D. Ariz. July 20, 2012) (quoting *Boice v. Stevenson*, 66 Ariz. 308, 187 P.2d 648, 653 (1947)).

Plaintiff has not alleged that the parties were in competition or that the public was likely to be confused. (*See* Doc. 1 at ¶¶ 35–40). So, Plaintiff's claim for unfair competition must be dismissed as he has not alleged the necessary elements to maintain this claim. *See Lerner & Rowe*, 684 F. Supp. 3d at 956; *Hamlin*, 2012 WL 2976724, at *6.

### E.     Tortious Interference

It is well-established in Arizona "that a person who intentionally interferes with contractual relationships between other parties can be held liable under certain circumstances to a party injured by the interference." *Safeway Ins. Co., Inc. v. Guerrero*, 106 P.3d 1020, 1024 (Ariz. 2005) (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust*, 38 P.3d 12, 31 (Ariz. 2002)). To establish a claim for tortious interference with contractual relations, the plaintiff must show: "(1) existence of a valid contractual relationship, (2) knowledge of the relationship on the part of the interferer, (3) intentional interference inducing or causing a breach, (4) resultant damage to the party whose relationship has been disrupted, and (5) that the defendant acted improperly." *Id.*; *see also Dancesprot Videos LLC v. Kunitz*, 2012 WL 5381421, at *9 (D. Ariz. Nov. 1, 2012) (identifying elements of a claim for tortious interference with contract under Arizona law).

Plaintiff alleges that an unknow Doe party interfered with Plaintiff's contractual relationship with Namecheap. (Doc. 1 at ¶ 41). Plaintiff alleges that "Doe 1" intentionally and wrongfully interfered with his contract by providing Namecheap with a copy of the CHRO or related legal documents, and urged or demanded that Namecheap suspend his domain registrations. (*Id.* at ¶ 44). He also states that "Doe l's actions were not merely providing information; they were done with the intent that Namecheap take down the domains." (*Id.*)

Plaintiff has not plausibly alleged that the Doe Defendant acted improperly. He simply alleges that the Doe Defendant furnished Namecheap with a copy of a court order: the CHRO. He speculates about the intent of the Doe Defendant in doing so. Making Defendant aware of a valid restraining order that was entered against Plaintiff, a public record, is hardly an improper act. *See Guerrero*, 106 P.3d at 1024. Plaintiff's allegations are little more than "unadorned, 'the defendant-unlawfully-harmed-me' accusation[s]." *Iqbal*, 556 U.S. at 678. Because Plaintiff claims are nothing more than "naked assertions" without "further factual enhancement[,]" the Court must dismiss his claim for tortious

interference. *See Twombly*, 550 U.S. at 555.

### F. Declaratory Judgment

Plaintiff states that he seeks a declaratory judgment "to resolve this dispute and guide the parties' actions going forward." (Doc. 1 at ¶ 50). He later clarifies that he seeks a declaration that (1) he has a lawful right to use the domain names he owns; (2) Namecheap is not legally obligated to suspend his domains; (3) Defendant's suspension of the domain names "constitutes a breach" of its obligations; and (4) the use and registration of his domains is not prohibited by the CHPO or "any law." (*Id.*)

The Declaratory Judgement Act, 28 U.S.C. § 2201 ("DJA") states that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]" *Id*. § 2201(a). The DJA "is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *N. Cnty. Commc'ns Corp. v. Verizon Glob. Networks, Inc*., 685 F. Supp. 2d 1112, 1122–23 (S.D. Cal. 2010) (quoting *Public Service Comm'n of Utah v. Wycoff Co*., 344 U.S. 237, 241 (1952)). "To avail itself of the Declaratory Judgment Act, the claimant must show [1] a justiciable controversy exists, and [2] the controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests." *Id*. (citations omitted).

The exercise of jurisdiction under the DJA is at the discretion of the district court. *Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). "Even if the district court has subject matter jurisdiction, it is not required to exercise its authority to hear the case." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002). However, "[a] District Court cannot decline to entertain such an action as a matter of whim or personal disinclination." *Dizol*, 133 F.3d at 1223. When determining whether to retain jurisdiction over a DJA action, the Court "must make a sufficient record of its reasoning to enable appropriate appellate review." *Id*. at 1225. When a breach of contract claim would resolve all questions regarding contract interpretation, "declaratory relief may be duplicative and inappropriate." *Fine v. Kansas City Life Ins. Co*., 627 F. Supp. 3d 1153,

1164 (C.D. Cal. 2022) (citing *United Safeguard Distributors Ass'n, Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp. 3d 932, 961 (C.D. Cal. 2015)).

The "*Brillhart* factors" are the "philosophic touchstone" of a district court's analysis when examining the propriety of entertaining a declaratory judgment action. *757BD LLC*, 330 F.Supp.3d at 1159 (quoting *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011)). The three *Brillhart* factors are: "(1) avoiding needless determinations of state-law issues; (2) discouraging litigants from filing declaratory actions as a means of forum shopping; and (3) avoiding duplicative litigation." *Id*. In addition to the *Brillhart* factors, the Court must "balance concerns of judicial administration, comity, and fairness to the litigants." *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991).

Upon consideration of these factors, the Court finds Plaintiff's DJA action is duplicative and unnecessary when brought alongside his breach of contract claim. Declaratory relief is a remedy, not an independent cause of action. *AVT Tech. Sols., LLC v. Software Info. Sys., LLC*, 2020 WL 13864481, at *4 (D. Ariz. July 1, 2020). When a DJA action is "derivative of the included contract claim, the district court may read the declaratory relief claim as part of the breach of contract claim." *HM Hotel Properties v. Peerless Indemnity Ins. Co.*, 874 F. Supp. 2d 850, 855 (D. Ariz. 2012) (citing *Madrid v. Concho Elementary School Dist. No. 6 of Apache County*, 439 Fed. Appx. 566, 567 (9th Cir. 2011)).

Plaintiff's DJA action is "duplicative and inappropriate" because Plaintiff's breach of contract claim will resolve all questions at issue in this matter. *See Fine*, 627 F. Supp. 3d at 1164. For example, Plaintiff asks the Court to declare that Defendant's suspension of the domain names "***constitutes a breach***" of its obligations to Plaintiff. (Doc. 1 at ¶ 50) (emphasis added). So, in its discretion, the Court will not entertain Plaintiff's duplicative request for a declaratory judgment. *See Dizol*, 133 F.3d at 1223.

### IV. Conclusion

In sum, only Plaintiff's breach of contract claim remains. However, the Court will allow Plaintiff leave to amend his Complaint, if he chooses to do so. A court should "freely

give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 926 (9th Cir. 2012) (en banc) (citation omitted). Typically, a district court should not dismiss a complaint with prejudice if an amendment could save the complaint. *Thinket Ink Information Resources, Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Here, the Court dismisses all but Plaintiff's breach of contract claim, but will allow Plaintiff leave to amend his unfair competition and tortious interference claims because an amendment could save these claims.

Accordingly,

**IT IS ORDERED** that Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's claims for Conversion, Breach of the Implied Covenant of Good Faith and Fair Dealing, Unfair Competition, Tortious Interference and for a Declaratory Judgment (Doc. 1 at ¶¶ 21–24, 30–52) are **DISMISSED**. Only Plaintiff's Breach of Contract claim remains.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file a First Amended Complaint by **August 25, 2025**.

**IT IS FURTHER ORDERED** that, in light of Plaintiff's pending Motion for a TRO (Doc. 2), Plaintiff must file proof of service of his Complaint (Doc. 1), his summons *and this Order* upon Defendant by **July 26, 2025, at 9:00 A.M**.[7] Defendant must respond to Plaintiff's TRO Motion (Doc. 2) by **July 29, 2025, at 5:00 PM**. Plaintiff will be allowed to submit a Reply to Defendant's Response by **July 31, 2025, at 12:00 PM**.

/ / /
/ / /
/ / /
/ / /
/ / /

---

[7] In his TRO Motion, Plaintiff states that he "is serving Defendant with this Motion, so the request for a TRO can be considered with notice." (Doc. 2 at 5).

**IT IS FINALLY ORDERED** setting a telephonic Temporary Restraining Order Hearing for **August 1, 2025, at 10:00 AM** in Courtroom 605, 401 West Washington Street, Phoenix, AZ 85003 before Judge Diane J Humetewa. The parties will be emailed dial-in information prior to the Hearing.

Dated this 25th day of July, 2025.

_____
Honorable Diane J. Humetewa
United States District Judge