**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Afonso Infante, | No. CV-25-02537-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Namecheap Incorporated, | |
| Defendant. | |

*Pro se* Plaintiff Afonso Infante ("Plaintiff") initiated this action on July 21, 2025, by filing a Complaint (Doc. 1) and an Application for a Temporary Restraining Order ("TRO Motion") against Defendant Namecheap Incorporated ("Defendant"). (Doc. 2). Plaintiff also sought *in forma pauperis* ("IFP") status, and on July 25, 2025, the Court granted Plaintiff IFP status and screened his Complaint under 28 U.S.C. § 1915(e)(2). (Doc. 12). The Court found Plaintiff plausibly alleged a claim for breach of contract against Defendant. (*Id.*) The Court thus ordered Plaintiff to serve Defendant and set an expedited briefing schedule and telephonic TRO hearing for August 1, 2025. (*Id.* at 12–13). The TRO Motion is now fully briefed (Docs. 18 & 20). Defendant has also filed a Request for Judicial Notice (Doc. 19) which Plaintiff has objected to (Doc. 22). Upon consideration of the parties' briefing, the Court will deny Plaintiff's TRO Motion and vacate the TRO hearing.

**I.     Background**

Plaintiff brought several claims against Defendant for the suspension of six domains

he registered through it: vanessarallonza.com, vanessa-rallonza.com, vanessarallonza.net, vanessa-rallonza.net, vanessarallonza.org and vanessa-rallonza.org. (Doc. 1 at 1, 4). These sites are related to a "particular individual" who Plaintiff claims he has had "prior interactions" with. (*Id*.) Plaintiff notes that Defendant suspended these domains because of an ongoing legal proceeding in which a "third party" obtained a Civil Harassment Restraining Order ("CHRO") against him in California. (*Id*. at 5). Plaintiff avers that he had appealed the CHRO and claims his appeal stays the Order under California Code of Civil Procedure § 916(a). (*Id*.)

After Defendant suspended Plaintiff's domains, Plaintiff brought claims against Defendant for: (1) Conversion under California Law; (2) Breach of Contract; (3) Breach of Implied Covenant of Good Faith and Fair Dealing under Nevada Law; (4) Unfair Competition under California's Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200 *et seq*.; and (5) Declaratory Judgment under 28 U.S.C. § 2201.[1] (Doc. 1 at 10–19). The Court screened Plaintiff's Complaint and found that only his breach of contract claim could proceed. (Doc. 12).[2] Plaintiff concurrently filed a TRO Motion seeking "immediate reinstate[ment of] the domains and enjoining Namecheap from further interference, and that the Court set a prompt hearing for a preliminary injunction to maintain that relief during the litigation." (Doc. 2 at 2). In its Response, Defendant has provided the applicable Registration Agreement ("the Agreement") between the parties. (Doc. 18-1 at 5–28). The parties' choice of law provision mandates that "any action brought by you to enforce this Agreement . . . which relates to your use of the Services shall be brought exclusively in the United States District Court of Arizona, or if there is no jurisdiction in such court, then in a state court in Maricopa County[.]" (*Id*. at 25). The Agreement also provides that:

---

[1] Plaintiff also alleged a Tortious Interference with Contract claim against a Doe Defendant. (Doc. 1 at 17).

[2] The Court allowed Plaintiff leave to amend his unfair competition and tortious interference claims after it screened and dismissed those claims. (Doc. 12 at 11–12). Plaintiff has since filed a First Amended Complaint. (Doc. 16). Plaintiff bases his TRO request upon his original Complaint (Doc. 1), so, the Court will not address these newly alleged claims herein and will screen these claims by separate Order.

- 2 -

>we may terminate or suspend the Service(s) at any time for cause, which, without limitation, includes registration of prohibited domain name(s), abuse of the Services, payment irregularities, material allegations of illegal conduct, or if your use of the Services involves us in a violation of any Internet Service Provider's ("ISP's") acceptable use policies, including the transmission of unsolicited bulk email in violation of the law.

(*Id*. at 7).

Defendant has also provided the CHRO Order which restrains Plaintiff. (*Id*. at 30–36). The Order mandates that Plaintiff stay 100 yards away from Ms. Rallonza, her home and her job. (*Id*. at 31). The CHRO specifically mandates that Plaintiff:

>[M]ust not create, [m]aintain, publish, advertise; or request, solicit, pay, or otherwise cause any third party to create, maintain, publish, or advertise any website or other social media content ***containing intimate images of protected party*** Vanessa Rallonza. For purposes of this order, "intimate images" means any picture, drawing, photograph, motion picture, or other pictorial representation depicting Ms. Rallonza full or partial state of undress or showing any intimate body part of Ms. Rallonza. An "intimate body part" for purposes of this order means any portion of the genitals, anus, or portion of the breast below the top of the areola, that is either uncovered or clearly visible through clothing.

(*Id*. at 36) (emphasis added). The CHRO does not expire until June 10, 2030. (*Id*. at 30). It also details that a hearing was held on June 11, 2025, and that Plaintiff as well as Ms. Rallonza's attorney attended this hearing, but that Ms. Rallonza did not. (*Id*. at 31). It does not appear that Ms. Rallonza's substantive allegations of harassment listed in her CHRO request (Doc. 19 at 7–12) were adopted by the state court. (*See* Doc. 18-1 at 5–28).

## II.   Legal Standard

A TRO preserves the status quo pending a hearing on a preliminary injunction motion in order to avoid irreparable harm in the interim. *See Ariz. Recovery Housing Ass'n v. Ariz. Dep't of Health Servs.*, 2020 WL 8996590, at *1 (D. Ariz. May 14, 2020); *Bronco Wine Co. v. U.S. Dept. of Treasury*, 997 F. Supp. 1309, 1313 (E.D. Cal. 1996). The standards governing temporary restraining orders and preliminary injunctions are "substantially identical." *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (citation omitted). Preliminary injunctive relief is an "extraordinary remedy never awarded

1  as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a
2  preliminary injunction, a plaintiff must show: (1) a likelihood of success on the merits, (2)
3  a likelihood of irreparable harm if injunctive relief were denied, (3) that the equities weigh
4  in the Plaintiff's favor, and (4) that the public interest favors injunctive relief. *Id.* at 20.
5  The movant carries the burden of proof on each element of the test. *See Los Angeles
6  Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir.
7  1980).

8        The Ninth Circuit employs a "sliding scale" approach to preliminary injunctions,
9  under which "the elements of the preliminary injunction test are balanced, so that a stronger
10 showing of one element may offset a weaker showing of another." *All. for the Wild Rockies
11 v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "The moving party may meet [its] burden
12 by showing either: (1) a combination of probable success on the merits and a possibility of
13 irreparable injury, or (2) the existence of serious questions going to the merits and that the
14 balance of hardships tips sharply in its favor." *Nouveau Riche Corp. v. Tree*, 2008 WL
15 55381513, at *4 (D. Ariz. Dec. 23, 2008) (citing *Earth Island Inst. v. U.S. Forest Serv.*,
16 351 F.3d 1291, 1298 (9th Cir. 2003)). "[C]ourts 'must balance the competing claims of
17 injury and must consider the effect on each party of the granting or withholding of the
18 requested relief,'" and should be particularly mindful, in exercising their sound discretion,
19 of the "public consequences in employing the extraordinary remedy of injunction." *Id*. at
20 24 (citations omitted).

21       Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is
22 the power of the court to fashion a remedy depending upon the necessities of the particular
23 case." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (citing *United
24 States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)). The
25 temporary restraining order "should be restricted to serving [its] underlying purpose of
26 preserving the status quo and preventing irreparable harm just so long as is necessary to
27 hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto
28 Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

While courts "construe *pro se* filings liberally when evaluating them under *Iqbal*[,]" *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (citation omitted), "*pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record." *Abet Just. LLC v. First Am. Tr. Servicing Sols., LLC*, 237 F. Supp. 3d 1059, 1062 (D. Nev. 2017) (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986)).

### III.    Discussion

In his TRO Motion, Plaintiff asks the Court to order Defendant to restore his access to the six domains he alleges were unlawfully suspended. (Doc. 2 at 1). Plaintiff avers that he is entitled to this relief under the *Winter* factors. (*Id*. at 5). Defendant argues, on the other hand, that Plaintiff is not likely to succeed on the merits of his breach of contract claim because Section 4 of the Agreement expressly provides that Namecheap "may terminate or suspend the Service(s) at any time for cause, which, without limitation, includes . . . material allegations of illegal conduct." (Doc. 18 at 5). The Court agrees that Plaintiff is not likely to succeed on the merits of his breach of contract claim, therefore, he is not entitled to a TRO.

####     A.    Judicial Notice

The Court will first address Defendant's request to take judicial notice of Ms. Rallonza's CHRO Request. (Doc. 19). Defendant argues that the Request is "directly relevant to the matters at issue because the Petition filed against Infante describes conduct that violated the Terms and Conditions and led to the suspension of the domain names at issue in this case." (*Id*. at 3). Plaintiff does not object to the Court taking notice that the CHRO Request was filed. (Doc. 22 at 1). He objects, however, to the Court taking notice of the Request's factual allegations as they are "heavily disputed." (*Id*.)

Under Federal Rule of Evidence 201, a court may "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court "***must*** take

judicial notice if a party requests it and the court is supplied with the necessary information." *Id.* at 201(c) (emphasis added).  Public records, such as a Court Order, are proper subjects of judicial notice.  *See, e.g., United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007).  However, as Plaintiff argues, courts "cannot take judicial notice of the contents of documents for the truth of the matters asserted therein when the facts are disputed." *Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1007 (N.D. Cal. 2024) (quoting *Cal. Sportfishing Prot. All. v. Shiloh Grp., LLC*, 268 F.Supp.3d 1029, 1038 (N.D. Cal. 2017)).  This tracks the rule itself, which only allows a fact to be noticed if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b).

It appears that Defendant agrees, as it has included the following parenthetical in its Response: "judicial notice [is] proper for existence of legal documents and orders, ***though not for disputed facts contained within***." (Doc. 19 at 3 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).  The Court will take judicial notice of Ms. Rollanza's CHPO Request (Doc. 19 at 7–12), however, to the extent any facts in the Request are subject to reasonable dispute, the Court will not take judicial notice of those facts.  *See Lee*, 250 F.3d at 689; *Matthews*, 769 F. Supp. 3d at 1007.

### B.     Likelihood of Success on the Merits

Plaintiff argues that he is likely to succeed on the merits of all six claims he originally brought. (Doc. 2 at 6–8).  The Court will only analyze the likelihood of success on the merits of Plaintiff's active claim for breach of contract.[3]  The Court finds that Plaintiff is not likely to succeed on this claim, so, Plaintiff is not entitled to a TRO.

A reasonable probability of success is all that need be shown for preliminary injunctive relief—an overwhelming likelihood is not necessary.  *Candrian v. RS Indus., Inc.*, 2013 WL 2244601, at *3 (D. Ariz. May 21, 2013) (citing *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991)). "Serious questions are 'substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.' " *Gilder*, 936 F.2d at 422 (quoting *Hamilton Watch Co. v. Benrus Watch*

---

[3] Any new or amended claims Plaintiff brings in his First Amended Complaint (Doc. 16) have yet to be screened.

*Co.*, 206 F.2d 738, 740 (2nd Cir. 1953)).  "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a 'fair chance of success on the merits.' "  *Id*. (quoting *National Wildlife Fed'n v. Coston*, 773 F.2d 1513, 1517 (9th Cir. 1985)).

Plaintiff argues that he is likely to succeed on his breach of contract claim because the parties entered into a binding agreement, which Plaintiff complied with, and that Defendant breached this agreement by suspending his domain access in an "arbitrary and unfair" manner.  (Doc. 2 at 7).  To state a cognizable claim for breach of contract under Arizona law, a plaintiff must allege that "(1) a contract existed, (2) it was breached, and (3) the breach resulted in damages."  *Riverwalk Condo. Unit Owners Ass'n v. Travelers Indem. Co.*, 2018 WL 3774084, at *2 (D. Ariz. June 28, 2018) (citing *Steinberger v. McVey ex rel. Cty. of Maricopa*, 234 Ariz. 125, 140 (Ariz. Ct. App. 2014)).

Defendant argues that Plaintiff cannot show that it breached the Agreement as the Agreement allows it to suspend a domain "***in its sole and unlimited discretion*** . . . to stop or prevent any violations of any terms and conditions of [the] Agreement."  (Doc. 18 at 5). Plaintiff argues that the Agreement only permits suspension for certain enumerated grounds, such as "non-payment, clear policy abuse, binding legal order, etc.[,]" and that Defendant identifies no such grounds.  (Doc. 20 at 3).  Plaintiff also argues that Defendant suspended his domains without notice in defiance of the Agreement's notice requirements.  (*Id*. at 2).[4]

Arizona courts construe the meaning of contract provisions from the language the parties used and in view of all surrounding circumstances.  *Smith v. Melson, Inc.*, 659 P.2d 1264, 1266 (Ariz. 1983).  Words will be given their ordinary meaning and courts should interpret the contract "so as to make it effective and reasonable."  *Phelps Dodge Corp. v. Brown*, 540 P.2d 651, 653 (Ariz. 1975).  "It is a general rule that the construction of a contract is a question for the court when its terms are plain and unambiguous on its face."

---

[4] Plaintiff states that the "ICANN Registrar Accreditation Agreement" requires registrars to "give registrants 'reasonable time' to respond before taking action." (Doc. 20 at 3). This provision does not appear to be adopted in the Agreement at issue here, however. (Doc. 18-1 at 5–28).

- 7 -

*Riverwalk Condo. Unit Owners Ass'n*, 2018 WL 3774084, at *2 (citing *Shattuck v. Precision Toyota, Inc.*, 566 P.2d 1332, 1334 (Ariz. 1977)). "[W]here the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it [beyond] its plain and ordinary meaning or add something to the contract which the parties have not put there." *Ratchford v. Watford Specialty Ins. Co.*, 659 F. Supp. 3d 1032, 1038 (D. Ariz. 2023) (quoting *D.M.A.F.B. Fed. Credit Union v. Emps. Mut. Liab. Ins. Co. of Wis.*, 396 P.2d 20, 23 (1964).

Here, the Agreement provides that Defendant "may terminate or suspend the Service(s) *at any time* for cause, which, *without limitation*, includes *material allegations* of illegal conduct." (Doc. 18-1 at 7) (emphasis added). It does not require, as Plaintiff argues, a "binding legal order." (*Compare id*. *with* Doc. 20 at 3). Ms. Rallonza filed a request for a CHRO wherein she alleged that Plaintiff harassed her. (Doc. 19 at 7–12). Based on Ms. Rallonza's allegations, a California state court granted her a CHRO until June of 2030. (Doc. 18-1 at 30–36). The CHRO specifically mandates that Plaintiff "must not create, [m]aintain, publish, advertise . . . any website or other social media content containing intimate images of protected party Vanessa Rallonza." (*Id*. at 36).

Though the CHRO is on appeal,[5] its issuance allowed Defendant to find that there have been material *allegations* of illegal conduct made against Plaintiff. (*See* Doc. 18-1 at 7). An "allegation is "a statement, not yet proved, that someone has done something wrong or illegal." *Allegation*, BLACK'S LAW DICTIONARY (12th ed. 2024). A "material allegation" is "an assertion that is essential to the claim, charge, or defense" in a "pleading." *Material allegation*, BLACK'S LAW DICTIONARY (12th ed. 2024). Ms. Rallonza alleged in her CHRO request that Defendant had harassed her by "creat[ing] websites with intimate images" of her and sending these sites to her family. (Doc. 19 at 7). While the Court will

---

[5] Plaintiff argues that the appeal of the CHRO stays it under California Code of Civil Procedure § 916(a) and thus cannot be used as a basis to suspend the Domains. (*See e.g.*, Doc. 2 at 3). The Court finds this argument immaterial to the issue of whether Defendant could find that "material *allegations* of illegal conduct" exist stemming from the issuance of CHRO. (Doc. 18-1 at 7).

1  refrain from taking judicial notice of these facts or accepting them as true, Fed. R. Evid.
2  201(b), Defendant was allowed to rely on these allegations and the CHRO entered against
3  Plaintiff to find that he violated the Agreement. (Doc. 18-1 at 7). The materiality of these
4  allegations violating the Agreement between the parties is underscored by the state court's
5  admonishment that Plaintiff must not "publish . . . intimate images of protected party [Ms.]
6  Rallonza." (*Id*. at 36). The plain language of the parties' Agreement therefore puts
7  Defendant within its right to terminate or suspend Plaintiff's Domains accordingly. (*See id*.
8  at 10 ("You agree that Namecheap reserves the right to suspend and/or delete your
9  registered name as a consequence of engaging in activity contrary to applicable law and
10 any related procedures.")).

11 In sum, Plaintiff cannot show that he has a fair chance of success on the merits of
12 his breach of contract claim, so, he is not entitled to a TRO. *See Winter*, 555 U.S. at 24;
13 *Candrian*, 2013 WL 2244601, at *3.

**C.   Fees**

15 Defendant seeks fees and costs under A.R.S. § 12-341.01 and the Agreement.
16 (Doc. 18 at 9). It argues that, because this action arises out of allegations that Defendant
17 breached the Agreement, it is entitled to fees. *See* A.R.S. § 12-341.01 ("[i]n any contested
18 action arising out of a contract, express or implied, the court may award the successful
19 party reasonable attorneys' fees."). Plaintiff does not argue against fees in his Reply.
20 (*See* Doc. 20). The Court will not grant Defendant fees, as it is not a "successful party"
21 such that fees would be appropriate.

22 To award attorneys' fees under Section 12-341 the Court must find that this action
23 "arises out of a contract, that Defendants are the 'successful' or ***prevailing party***, that an
24 award of attorneys' fees is appropriate, and that the requested fees are reasonable."
25 *Kaufman v. Warner Bros. Ent. Inc*., 2019 WL 2084460, at *4 (D. Ariz. May 13, 2019)
26 (citing *Lexington Ins. Co. v. Scott Homes Multifamily Inc*., 2016 WL 5118316, at *2 (D.
27 Ariz. Sept. 21, 2016) (emphasis added)). "Ultimately, any award under A.R.S. § 12-341.01
28 'should be made to mitigate the burden of the expense of litigation to establish a just claim

- 9 -

or a just defense.' " *Id*. (quoting A.R.S. § 12-341.01(B)). "Trial courts "have broad discretion when determining whether to award fees under § 12-341.01(A)." *Karon v. Safeco Ins. Co. of Am.,* 2021 WL 5416632, at *2 (D. Ariz. Nov. 19, 2021) (citing *Associated Indem. Corp. v. Warner*, 694 P.2d 1181, 1184 (Ariz. 1985) (en banc)).

Fees are premature at this juncture. Defendant must show that it is the "prevailing party" to be entitled to fees under Section 12-341. The Court has found that Plaintiff has not established a reasonable probability of succeeding on his breach of contract claim. *See supra* Section III.B. However, it has not had the opportunity to fully assess Plaintiff's breach of contract claim. If Plaintiff's breach claim is ultimately found to not be plausibly alleged or is otherwise dismissed, Section 12-341 provides Defendant an avenue to recover its attorneys' fees as the successful party since Plaintiff's claim arises out of a contract. *See* A.R.S. § 12-341.01. But simply defending against Plaintiff's TRO Request does not make Defendant the successful or prevailing party under Section 12-341—yet. *See Drozda v. McComas*, 887 P.2d 612, 615 (Ariz. Ct. App. 1994) ("The term 'successful party' means the party who wins the lawsuit." ); *see also prevailing party*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "prevailing party" as the one "in whose favor a judgment is rendered"). Because Plaintiff's breach of contract claim has not been dismissed, the Court declines to find that Defendant has ultimately prevailed in this matter, and the Court cannot presently find that Defendant is entitled to fees under Section 12-341. *Desert Mountain Props. Ltd. P'ship v. Liberty Mut. Fire Ins. Co*., 236 P.3d 421, 440 (Ariz. Ct. App. 2010), *aff'd*, 250 P.3d 196 (Ariz. 2011) ("The successful party is the one that is the 'ultimate prevailing party' in the litigation.") (citation omitted).

Accordingly,

**IT IS ORDERED** that Plaintiff's TRO Motion (Doc. 2) is **DENIED** and the TRO Hearing set for Friday, August 1, 2025, is **VACATED**.

/ / /

/ / /

/ / /

**IT IS FURTHER ORDERED** that Defendant's request for Attorney's Fees (Doc. 18 at 9) is **DENIED** without prejudice.

Dated this 31st day of July, 2025.

Honorable Diane J. Humetewa
United States District Judge