**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Afonso Infante, | No. CV-25-02537-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Namecheap Incorporated, | |
| Defendant. | |

Plaintiff initiated this action on July 21, 2025, by filing a Complaint (Doc. 1) and an Application for a Temporary Restraining Order ("TRO Motion")[1] against Defendant Namecheap Incorporated ("Defendant"). (Doc. 2). Plaintiff sought *in forma pauperis* ("IFP") status, which the Court granted, and it screened his original Complaint under 28 U.S.C. § 1915(e)(2). (Doc. 12). While that matter was pending, and before the Court could consider the TRO Motion, Plaintiff amended his Complaint. (Doc. 16). The Court will now screen Plaintiffs' First Amended Complaint ("FAC") under 28

---

[1] The Court denied Plaintiff's TRO Motion ("the TRO Order") on July 31, 2025. (Doc. 24). After briefing by the parties, it found that Plaintiff was unlikely to succeed on his breach of contract claim where the Agreement between the parties allowed Defendant to "terminate or suspend the Service(s) at any time for cause, which, without limitation, includes material allegations of illegal conduct." (*Id.* at 8). Plaintiff seeks reconsideration of that Order on the grounds that the Court "did not address several pivotal points that establish Plaintiff's likelihood of success on the merits, the irreparable harm he faces, and the equities strongly favoring interim relief." (Doc. 25). Because this second screening Order finds that Plaintiff's FAC fails to state a plausible breach of contract claim, the Court will summarily deny Plaintiff's Motion for Reconsideration. Where Plaintiff has not alleged a plausible claim, he cannot establish a likelihood of success on the merits of that claim. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

U.S.C. § 1915(e)(2).

## I. Background[2]

Plaintiff brought several claims against Defendant for the suspension of six domains he registered through it: vanessarallonza.com, vanessa-rallonza.com, vanessarallonza.net, vanessa-rallonza.net, vanessarallonza.org and vanessa-rallonza.org. (Doc. 1 at 1, 4). The parties entered into a Registration Agreement ("the Agreement"), which provides that:

> we may terminate or suspend the Service(s) **at any time for cause**, which, without limitation, includes registration of prohibited domain name(s), abuse of the Services, payment irregularities, **material allegations of illegal conduct**, or if your use of the Services involves us in a violation of any Internet Service Provider's ("ISP's") acceptable use policies, including the transmission of unsolicited bulk email in violation of the law.

(Doc. 18-1 at 7) (emphasis added).

Plaintiff's FAC re-alleges his claims for Breach of Contract and Unfair Competition against Defendant as well as his claim for Tortious Interference with a Contractual Relationship against "Doe 1." (Doc. 16).

## II. Legal Standard

When a party has been granted IFP status, the Court must review the complaint to determine whether the action:

(i)   is frivolous or malicious;
(ii)  fails to state a claim on which relief may be granted; or
(iii) seeks monetary relief against a defendant who is immune from such relief.

*See* 28 U.S.C. § 1915(e)(2)(B).[3]   In conducting this review, "section 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."

---

[2] The Court's TRO Order (Doc. 24) provides the procedural and factual background relevant to this matter and need not be wholly repeated here.

[3] "While much of § 1915 outlines how prisoners can file proceedings *in forma pauperis*, § 1915(e) applies to all *in forma pauperis* proceedings, not just those filed by prisoners." *Long v. Maricopa Cmty. Coll. Dist.*, 2012 WL 588965, at *1 (D. Ariz. Feb. 22, 2012) (citing *Lopez v. Smith*, 203 F.3d 1122, 1126 n.7 (9th Cir. 2000) ("[S]ection 1915(e) applies to all *in forma pauperis* complaints[.]"); *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) ("[T]he provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners.") (citation omitted). Therefore, section 1915 applies to this non-prisoner IFP Complaint.

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).

Federal Rule of Civil Procedure 8(a) requires complaints to make "a short and plain statement of the claim showing that the pleader is entitled to relief." While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, 'the defendant-unlawfully-harmed-me' accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[4] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

The Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. The Court is mindful that it must also "construe pro se filings liberally when evaluating them under *Iqbal*." *Jackson v. Barnes*, 749 F.3d 755, 763–64 (9th Cir. 2014) (quoting *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)). However, "*pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record." *Abet Just. LLC v. First Am. Tr. Servicing Sols., LLC*, 237 F. Supp. 3d 1059, 1062 (D. Nev. 2017) (quoting *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986)).

The court ordinarily may not consider evidence outside the pleadings in ruling on a

---

[4] "Although the *Iqbal* Court addressed pleading standards in the context of a Rule 12(b)(6) motion, the Court finds that those standards also apply in the initial screening of a complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A since *Iqbal* discusses the general pleading standards of Rule 8, which apply in all civil actions." *McLemore v. Dennis Dillon Auto. Grp., Inc.*, 2013 WL 97767, at *2 n.1 (D. Idaho Jan. 8, 2013).

- 3 -

Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id*. at 908. A document is considered incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claims." *Id*. Because "§ 1915(e)(2) tracks the language of Rule 12(b)(6)[,]" *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1118 (S.D. Cal. 2007) (citation omitted), the Court may consider the extrinsic evidence of the Agreement, CHRO Order and CHRO Request as they are incorporated by reference in Plaintiff's FAC. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (finding that it is proper to consider extrinsic evidence where the parties did not dispute the authenticity and the substance of the evidence was critical to plaintiff's claims) (citations omitted).

**III.   Discussion**

Plaintiff has not attached a copy of his FAC showing in what respect it differs from his original Complaint, as the Court's local rules require. *See* LRCiv 15.1(B) ("the amending party must file a separate notice of filing the amended pleading. The notice must attach a copy of the amended pleading that indicates in what respect it differs from the pleading which it amends, by bracketing or striking through the text that was deleted and underlining the text that was added."). The Court will nevertheless screen each of Plaintiff's claims in its discretion.

   **A.   Breach of Contract**

The legal requirements to allege a breach of contract claim are stated in the Court's TRO Order (Doc. 16) and need not be repeated here. Plaintiff's allegations supporting this claim appear to be substantially similar to the breach claim the Court allowed to proceed when screening his original Complaint. (Doc. 1).

The Court did not have the benefit of reviewing the Agreement between the parties when it screened Plaintiff's original Complaint. (Doc. 12). Now, however, after having

reviewed the Agreement, the Court concludes that Plaintiff cannot prevail on his breach of contract. *See Riverwalk Condo. Unit Owners Ass'n v. Travelers Indem. Co.*, 2018 WL 3774084, at *2 (D. Ariz. June 28, 2018) (stating the elements for a breach of contract claim). "[T]he construction of a contract is a question for the court when its terms are plain and unambiguous on its face." *Id*. The Agreement states, in plain and unambiguous terms, that Defendant "may terminate or suspend the Service(s) *at any time* for cause, which, *without limitation*, includes *material allegations* of illegal conduct." (Doc. 18-1 at 7) (emphasis added). Ms. Rallonza filed a request for a CHRO wherein she alleged that Plaintiff harassed her. (Doc. 19 at 7–12). Based on Ms. Rallonza's allegations, a California state court granted her a CHRO until June of 2030. (Doc. 18-1 at 30–36). The CHRO specifically mandates that Plaintiff "must not create, [m]aintain, publish, advertise . . . any website or other social media content containing intimate images of protected party Vanessa Rallonza." (*Id*. at 36).

Though the CHRO is on appeal, its issuance allowed Defendant to find that there have been material *allegations* of illegal conduct made against Plaintiff. (*See* Doc. 18-1 at 7; *see also* Doc. 24 at 8–9). Plaintiff cannot allege that Defendant breached the Agreement because its terms allow Defendant to suspend or terminate Plaintiff's services "at any time" for cause including "material allegations of illegal conduct." (Doc. 18-1 at 7). The CHRO Request and Order, when viewed together or by themselves, allows Defendant to find such allegations were material. (*See id*.) Plaintiff's breach of contract claim fails and must be dismissed. *See Riverwalk*, 2018 WL 3774084, at *2; *see also Pontiler S.A. v. OPI Prods. Inc*., 824 F. App'x 523, 526 (9th Cir. 2020) (noting that, where a contract expressly provides for a defendant's method of termination, Plaintiff's claim that Defendants needed good cause to terminate the contract is without merit).

### B. Unfair Competition

Plaintiff's newly alleged claim for unfair competition is substantially similar to the claim the Court screened and dismissed. (*Compare* Doc. 1 at 14-17 *with* Doc. 16 at 19-23). Plaintiff's FAC still does not allege that the parties were in competition or that the

public was likely to be confused. (*See* Doc. 6 at ¶¶ 35–46). So, Plaintiff's claim for unfair competition must be dismissed as he again has not alleged the necessary elements to maintain this claim. *Lerner & Rowe PC v. Brown Engstrand & Shelly LLC*, 684 F. Supp. 3d 953, 956 (D. Ariz. 2023), *aff'd*, 119 F.4th 711 (9th Cir. 2024) (noting that an unfair competition claim fails where the parties are not in competition and no public confusion was alleged). Furthermore, because Plaintiff registered his domains through Defendant, it is unlikely that he will be able to allege as much because he was Defendant's customer—not competitor. *See id.*

### C. Tortious Interference

For the second time, Plaintiff fails to plead a facially plausible claim that the Doe Defendant acted improperly. In Arizona, "a cause of action in tort is available to a party to any contract, at-will or otherwise, when a third party improperly and intentionally interferes with the performance of that contract." *Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1042 (Ariz. 1985). Liability is imposed for "any intentional and *unjustified* interference resulting in harm to the plaintiff." *Id.* (emphasis in original). Whether a particular action is improper can be determined by a consideration of seven factors:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interest sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 38 P.3d 12, 32 (Ariz. 2002) (quoting *Wagenseller*, 710 P.2d at 1042 (adopting the Restatement (Second) of Torts § 766's requirements for improper interference)). "Conduct specifically in violation of statutory provisions or contrary to public policy may[,] for that reason[,] make an interference improper." *Id.*

"To be liable for tortious interference with a contract, the defendant's actions must be improper as to motive or means." *ABCDW LLC v. Banning*, 388 P.3d 821, 831 (Ariz. Ct. App. 2016) (citation omitted). "[P]roof that an actor intentionally induced a

- 6 -

breach of contract is not sufficient to establish that the actor's conduct was improper. Rather, 'there is a requirement that the interference be *both* intentional and improper.' " *NCWC Inc. v. CarGuard Admin. Inc*., 635 F. Supp. 3d 815, 826 (D. Ariz. 2022) (quoting *Safeway Ins. Co. v. Guerrero*, 106 P.3d 1020, 1026 (2005)). "Improper" means "dishonest or unfair." *Id*. (quoting *Ulan v. Vend-A-Coin, Inc*., 558 P.2d 741, 745 (Ariz. 1976)).

Importantly, under Section 772 of the Restatement which has been adopted in Arizona, there is:

> no liability for interference with a contract or with a prospective contractual relation on the part of one who ***merely gives truthful information to another***. The interference in this instance is clearly not improper. This is true even though the facts are marshaled in such a way that they speak for themselves and the person to whom the information is given immediately recognizes them as a reason for breaking his contract or refusing to deal with another. It is also true whether or not the information is requested.

Restatement (Second) of Torts § 772 cmt. b (1979) (emphasis added).

Plaintiff alleges that "[i]t is improper to knowingly use a stayed or voided order to achieve a private end" and that "Doe 1 had no legal right or authority to command Namecheap's performance under Plaintiff's contract." (Doc. 16 at 25). These allegations fall short of an "improper act" under Arizona law. *Wells Fargo Bank*, 38 P.3d at 32; *see also Mac Enters. v. Del E. Webb Dev. Co*., 645 P.2d 1245, 1250 (Ariz. Ct. App. 1982) (holding that there is "no legal basis" for an alleged tortious interference claim where a defendant has done "what it had the right and power to do."). While the Court must accept all well-pleaded factual allegations as true and interpret the facts in the light most favorable to Plaintiff, *Shwarz,* 234 F.3d at 435, that rule does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

Plaintiff simply alleges that the Doe Defendant furnished Namecheap with a copy of a court order: the CHRO. (Doc. 16 at ¶¶ 47–55). He does not allege that the CHRO crests on false information—just that it was stayed. (*See id*.) The Court declines to find that the Doe Defendant's sharing of a publicly-available court order amounts to an improper act. *Cf. NCWC Inc.*, 635 F. Supp. 3d at 826 (noting that "improper" means

"dishonest or unfair."). Plaintiff speculates about the intent of the Doe Defendant and states that they did this to "silence and punish Plaintiff extrajudicially." (*Id.* at ¶ 52). However, informing Defendant of a publicly recorded restraining order entered against Plaintiff is hardly an improper or wrongful act. *See NCWC Inc.*, 635 F. Supp. 3d at 826; *Mac Enters.*, 645 P.2d at 1250; *cf. R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*, 2013 WL 2217831, at *16 (D. Ariz. May 20, 2013) (finding that "the defendants acted improperly" because the plaintiff alleged that they "made numerous statements and representations that the Defendants knew to be '***false*** and intended to deceive [plaintiff]" which "clearly constitute[s] improper actions.") (emphasis added). Plaintiff's allegations amount to little more than a "formulaic recitation of the elements of a cause of action" which "will not do." *Twombly*, 550 U.S. at 555. Thus, Plaintiff has again failed to plausibly allege a claim against the Doe Defendant for tortious interference on its face. *Iqbal*, 556 U.S. at 678.

### D. Leave to Amend

If the court dismisses a claim for failure to state a claim, it must then determine whether to grant leave to amend. *See Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). The Court should generally provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on [the] part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182, (1962)).

*Pro se* litigants "must be given leave to amend [their] complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Reed v. Muhammed*, 2024 WL 4846757, at *1 (C.D. Cal. Sept. 18, 2024) (quoting *Colbert v. Borg*, 967 F.2d 585, 585 (9th Cir. 1992)). "Due to a lack of familiarity with the law, the

rule 'favoring liberality in amendments to pleadings is particularly important for the *pro se* litigant.' " *Id*. (quoting *Lopez*, 203 F.3d at 1131).

When dismissing Plaintiff's claims previously, the Court allowed Plaintiff leave to amend. (Doc. 12). Now that the Court has the benefit of being able to review the Agreement between the parties, it makes clear that Plaintiff's breach of contract claim fails. (*See* Doc. 18-1); *see also Pontiler*, 824 F. App'x at 526. After allowing Plaintiff leave to amend his claims for tortious interference or unfair competition, it has also become clear that these claims cannot be saved by an amendment either. *See Manzarek*, 519 F.3d at 1031. Thus, the Court will not allow Plaintiff further leave to amend these claims and will dismiss his FAC with prejudice as it is clear that no amendment can save these claims. *See Reed*, 2024 WL 4846757, at *1.

Accordingly,

**IT IS ORDERED** that Plaintiff's First Amended Complaint (Doc. 16) is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 25) is **DENIED as moot**.

**IT IS FINALLY ORDERED** directly the Clerk of Court to terminate this matter.

Dated this 18th day of August, 2025.

Honorable Diane J. Humetewa
United States District Judge